IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES J. SARDONO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-291-W |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff, James Sardono, seeks judicial review of the Social Security Administration's denial of disability insurance benefits (DIB) and supplemental security income (SSI). This matter has been referred by United States District Judge Lee R. West for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be affirmed.

**I.   Procedural Background**

Plaintiff protectively filed his application for DIB on April 6, 2011, and for SSI on April 12, 2011. In both applications he alleged a disability onset date of April 1, 2011. The Social Security Administration (SSA) denied the application initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. *See* Administrative Record (AR) [Doc. No. 11], 37-47. The Appeals Council denied Plaintiff's request for review. AR 1-4. Thus, the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of that decision.

## II. The ALJ's Decision Issued July 26, 2013

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluations process); *see also* 20 C.F.R. §§ 404.1520, 416.920. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, April 1, 2011. AR 39. At step two, the ALJ determined that Plaintiff has the following severe impairments: status post lumbar spine fusions, times three; and right knee pain. *Id.* At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 39-40.

The ALJ next determined Plaintiff's residual functional capacity (RFC):

> [T]he claimant ha[s] the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except standing and/or walking cannot in any combination exceed two hours total combined. He can occasionally stoop and crouch. He can occasionally climb ramps and stairs, but never climb scaffolds or ladders. He requires the option to sit/stand at will at the workstation.

AR 40. At step four, the ALJ found that Plaintiff could not perform his past relevant work as a warehouse worker, carpenter I, electrician helper, spray painter II, machinist and machine engraver II. AR 45. At step five the ALJ considered Plaintiff's age, education and work experience, and the testimony of the vocational expert (VE). The ALJ determined Plaintiff could perform other jobs including food/beverage order clerk, call out operator and telephone quotation clerk and that these jobs exist in significant numbers in both the national and local economy. AR 46. The ALJ concluded, therefore, that Plaintiff was not disabled for purposes of the Social Security Act. AR 46-47.

### III. Plaintiff's Claims

Plaintiff challenges the ALJ's RFC determination on grounds it is not supported by substantial evidence. Plaintiff contends: (1) the ALJ erroneously relied upon the opinion of a non-examining, non-treating state agency physician, Dr. Metcalf, and should have further developed the record with respect to limitations resulting from Plaintiff's severe physical impairments by obtaining a consultative examination or an opinion from one of Plaintiff's treating physicians; (2) the ALJ failed to include functional limitations related to Plaintiff's right knee impairment or include in the official transcript the records of a knee surgery performed in 2012; (3) the ALJ failed to address the observations of an SSA employee, D. Gulston, about Plaintiff's difficulty sitting; (4) the ALJ's credibility finding is legally flawed because the ALJ did not follow the proper analysis when addressing Plaintiff's failure to comply with treatment and specifically, a recommendation by Plaintiff's surgeon to stop smoking; and (5) the ALJ's credibility findings with respect to Plaintiff's daily activities are based upon boilerplate language and not supported by substantial evidence.

### IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record

as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

V.    **Analysis**

   A.    **The ALJ's RFC Assessment is Supported by Substantial Evidence**

The ALJ provided a lengthy summary of the medical evidence. AR 40-45. The ALJ referenced the opinions of Plaintiff's treating physicians, Dr. Boone and Dr. Detwiler, in 2005 and 2006. These physicians provided treatment in relation to Plaintiff's need for back surgery that resulted in the placement of orthopedic hardware in Plaintiff's spine. AR 41-42.[1] The ALJ also referenced a back surgery in 2006 at which time the hardware was removed. AR 42. The ALJ discussed "functional capacity evaluation testing" performed thereafter in December 2006 by the Orthopedic Hospital of Oklahoma. *Id*. The ALJ stated: "[Plaintiff] performed at the light physical demand level and was given a 15-pound lifting restriction. However, it was not felt that the test was valid. There was felt to be symptom magnification and self-limiting behavior." *Id*. (*citing* Exhibit B19F). The ALJ further referenced Dr. Boone's functional assessment of Plaintiff as of December 2006 in which Dr. Boone opined that Plaintiff should "avoid repetitive bending and stooping and avoid climbing;" "[he] should limit his walking or standing each to

---

[1] Plaintiff's back impairments resulted from "a history of injuries that occurred while [Plaintiff was] in the employ of Great Plains Coca Cola." AR 41.

4

about an hour total per shift;" and "[h]e would do better with a sitting job where he would have the ability to change positions for every hour that he is sitting." AR 42.

Continuing with his summary of the medical evidence, the ALJ then addressed a worker's compensation evaluation of Plaintiff performed by Dr. Trinidad on January 31, 2007. Dr. Trinidad noted that Plaintiff's condition was chronic and stable, that maximum medical recovery had been achieved and that Plaintiff may require additional surgery in the future. Dr. Trinidad opined Plaintiff could not return to his former work and that he should "undergo vocational re-training to place him in a light duty job." AR 42 (*citing* Exhibit B1F).

As the record indicates, Plaintiff was awarded disability benefits following an administrative hearing in July 2009. AR 196. The record further indicates that after the second back surgery in 2006, Plaintiff attempted to return to work as a machinist holding one job from August 2008 through April 2009 and another job from February 2010 up to the alleged onset date, April 1, 2011. AR 200;[2] *see also* AR 62-63 (Plaintiff's attorney addressing to ALJ the fact that Plaintiff was awarded disability benefits "after 2006 and 2008, and then went back for vocational training, and went back to work . . . [until] he began experiencing problems again."). As Plaintiff's counsel pointed out to the ALJ during the hearing, the only "current RFC" for purposes of the application under review is a functional assessment by Dr. Metcalf, a state agency medical consultant. *See* AR 63 (referencing Exhibit B5F).

The ALJ gave "great weight" to the July 2011 opinion of Dr. Metcalf, as affirmed by Dr. Woodcock in August 2011. AR 45. The ALJ found that the opinions of Drs. Metcalf and

---

[2] According to the VE's testimony, work as a machinist is work performed at the medium exertional level. AR 76. The VE further addressed "mention of [past] work as a machine engraver" and identified that work as light work. AR 77.

Woodcock "are well supported by medically acceptable clinical and laboratory findings, and are consistent with the record when viewed in its entirety." *Id*.

Dr. Metcalf opined that Plaintiff can frequently climb, balance, kneel, crouch and crawl; occasionally stoop; sit about six hours in an eight-hour workday; and stand or walk at least two hours in an eight-hour workday. AR 356-57. Although the ALJ gave "great weight" to this opinion, he imposed additional, more significant exertional limitations in the RFC favorable to Plaintiff.[3]

### 1. The ALJ Properly Relied Upon Dr. Metcalf's Opinion as Evidence in Support of the RFC Determination

Plaintiff claims the ALJ's RFC is not supported by substantial evidence because Dr. Metcalf's RFC assessment is nothing more than a "check-the-box" evaluation form which, "standing alone unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence." *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987); *see also Fleetwood v. Barnhart*, 211 F. App'x 736, 740 (10th Cir. 2007) (finding that agency determinations that "primarily consisted of check-the-box forms with little or no explanation for the conclusions reached" and "very little medical evidence directly addressing [the claimant's] RFC" rendered the ALJ's findings concerning the claimant's functional abilities unsupported).

---

[3] As the Commissioner points out, the ALJ's failure to explain why he chose a greater limitation, which is more favorable to Plaintiff, does not constitute error. *See* Commissioner's Brief at p. 11, n. 4 (*citing Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)); *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (where an ALJ's RFC is consistent with findings of consulting physician in some areas and more favorable to the claimant in others such that giving weight to the opinion would not have helped the claimant, no prejudice results and any error, therefore, is harmless).

Plaintiff's claim is not well-founded. The ALJ's RFC assessment must be specific and supported by substantial evidence. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). In this regard:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical evidence facts . . . and nonmedical evidence . . . . In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Social Security Ruling (SSR) 96-8p, 1996 WL 374184 at *7 (July 2, 1996).

Plaintiff does not cite to any inconsistencies or ambiguities in the medical record. And, contrary to Plaintiff's contention that the RFC is supported only by a check-the-box form, the ALJ thoroughly summarized the medical record which included a consideration of functional limitations less restrictive or consistent with the ALJ's RFC. The ALJ specifically addressed the weight he was giving to Dr. Metcalf's opinion, as affirmed by a second consultative examiner, Dr. Woodcock, and specifically included a finding that their opinions were "well supported by medically acceptable clinical and laboratory findings, and are consistent with the record when viewed in its entirety." AR 45. The ALJ further considered non-medical evidence regarding Plaintiff's daily activities and subjective complaints of pain. AR 40-41, 44-45. This case, therefore, is factually distinct from *Fleetwood*, where the court rejected the ALJ's reliance on "check-the-box evaluation forms" because "no other medical evidence in the record specifically addresse[d] [the claimant's] ability to work." *Id.*, 211 F. App'x at 740.

7

### 2.   The ALJ Had No Duty to Further Develop the Record

Plaintiff also claims the ALJ's RFC is not supported by substantial evidence because Dr. Metcalf's assessment was, in essence, "stale" and did not account for subsequent, additional surgical intervention for Plaintiff's back impairment (a third surgery performed in April 2013) or a subsequent knee surgery (performed in 2012). Plaintiff claims the ALJ failed in his duty to develop the record by not obtaining a subsequent consultative examination or an opinion from one of Plaintiff's treating physicians as to Plaintiff's functional limitations.

Although the claimant has the burden of providing medical evidence proving disability, the ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues. *Baca v. Dept. of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993). Whether to order a consultative examination is a matter of broad latitude and may be ordered when information is not readily available from medical treatment sources or insufficient for a decision. *See* 20 C.F.R. §§ 404.1512(e), 404.1519a, 416.912(e), 416.919a. With respect to recontacting Plaintiff's treating physicians, the regulations similarly give the ALJ flexibility and discretion in deciding whether to recontact a treating source and provide that: "[i]f the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency." 20 C.F.R. §§ 404.1520b(c), 416.920b(c).

It is clear that Drs. Metcalf and Woodcock issued their opinions based on evidence existing as of July 2011, and that Plaintiff's medical records include treatment through April 2013. The Tenth Circuit has recognized that an ALJ's reliance on a "patently stale opinion" can

be "troubling." *Chapo*, 682 F.3d at 1293. But here, Plaintiff points to no evidence that would require the ALJ to further develop the record.

The ALJ had the records from Plaintiff's treating surgeon, Dr. Spence, reflecting his most recent back surgery in April 2013 and follow-up treatment including the time period just weeks prior to the hearing. AR 779-797. The ALJ considered this evidence and thoroughly discussed it. AR 43-44. And the ALJ addressed Plaintiff's decreased back pain, increased activity and improved sleep following that surgery. AR 44. Indeed, no treatment records following the April 2013 back surgery indicate Plaintiff's pain or functional limitations were more severe. *Compare Kearns v. Colvin*, No. 15-6078, 2015 WL 8479681 at **4-5 (10th Cir. Dec. 10, 2015) (unpublished op.) (ALJ's "thorough recitation of the medical evidence" demonstrated the ALJ "carefully considered all of the medical evidence in forumulating an RFC" and the fact that the ALJ's RFC was similar to medical opinions of agency doctors rendered prior to the claimant's alleged decline in mental health "did not mean it was based solely on stale evidence"). No duty to further develop the record exists where, as here, "sufficient information existed for the ALJ to make [his] disability determination." *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008).

Plaintiff also claims the ALJ did not fully develop the record because he did not obtain records concerning a knee surgery performed some time during 2012. But that surgery pre-dated the hearing before the ALJ by at least one year. Plaintiff, represented by counsel, had ample opportunity to provide those records and did not. Indeed, at the hearing Plaintiff's counsel acknowledged that he was at fault for not producing the records. AR 61.[4] *See Branum,* 385 F.3d at 1272 (concluding that, where claimant was represented by counsel, ALJ's failure to acquire

---

[4] Counsel stated: "[T]his gentleman had knee surgery in 2012, and the records are not here. And that's my fault. I would like time to produce those for the court." AR 61.

9

records more than a year before alleged onset date was not reversible error). And Plaintiff points to no evidence that the records from that surgery would support functional limitations different from those addressed by the ALJ. Moreover, the ALJ addressed the evidence in the record regarding Plaintiff's knee impairment, as did Dr Metcalf. AR 42-43, 356. The ALJ noted, in part, that Plaintiff's most recent treatment records from Dr. Spence revealed that Plaintiff "was able to squat and regain a standing position without difficulty." AR 44. Under these circumstances Plaintiff cannot fault the ALJ for not obtaining medical records regarding Plaintiff's knee surgery.[5]

### 3. The ALJ's Failure to Address the Observations of SSA Employee D. Gulston is Harmless

Plaintiff next faults the ALJ for not specifically addressing "other source" opinion evidence of D. Gulston, an agency employee who interviewed Plaintiff during the application process and made observations concerning the degree of Plaintiff's pain. *See* AR 198.[6] In support, Plaintiff relies on 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) that govern how

---

[5] The Court further notes that at the hearing, the ALJ advised Plaintiff's counsel that he could submit additional records, including a more recent RFC, if warranted. AR 81. Immediately following the hearing, Plaintiff's counsel sent correspondence to the ALJ requesting the ALJ to "schedule an evaluation for a new RFC in this matter." AR 270. However, Plaintiff's counsel never submitted additional evidence to the ALJ. Additionally, although Plaintiff's counsel submitted additional mental health records to the Appeals Council for review, Plaintiff did not submit any further medical records regarding Plaintiff's knee or back impairments. AR 19-30.

[6] During an interview conducted on April 12, 2011, D. Guston recorded the following observations concerning Plaintiff: "clm't stood up during interview from time to time and appeared to be in a great deal of pain. he was accompanied by his mother." AR 198, 199.

symptoms, including pain, are to be evaluated and require consideration of, among other evidence, "observations by [SSA] employees and other persons." *See id.*[7]

Although the ALJ did not expressly address this evidence in his opinion, the one-time contact with the SSA employee does not contain any opinion that is particularly probative nor did it provide significant evidence supporting disability. The ALJ is not required to discuss every piece of evidence in the record. Rather the ALJ is required to "discuss the uncontroverted evidence he chooses to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Plaintiff has not pointed to any significantly probative evidence that was not addressed by the ALJ.

Moreover, the ALJ stated he carefully considered the entire record, *see* AR 37, 39, 40, and the Tenth Circuit has stated it will take the ALJ at his word when the entirety of the ALJ's discussion of the evidence and the reasons for his conclusions demonstrate that he adequately considered the claimant's impairments. *Wall,* 561 F.3d at 1070. The Court finds that the ALJ's decision demonstrates he adequately considered the evidence and his failure to expressly address the observations made by the SSA employee, D. Gulston, does not warrant a remand.

Additionally, any error related thereto is harmless. Gulston's observations are largely cumulative. *See Davis v. Astrue*, 237 F. App'x 339, 342 (10th Cir. 2007) (finding no error in ALJ's failure to discuss testimony of claimant's wife where that testimony was largely cumulative of the claimant's testimony). The record is replete with evidence that Plaintiff suffers from pain due to his back impairment and that he must change positions as a result of that

---

[7] In addition, SSR 96–7p states: "[i]n evaluating the credibility of the individual's statements, the adjudicator must also consider any observations recorded by SSA personnel who have previously interviewed the individual, whether in person, or by telephone." *See id.* 1996 WL 374186, at *8 (July 2, 1996).

11

pain – evidence specifically addressed by the ALJ's RFC which provides an option to sit and stand at will. *See Keyes–Zachary*, 695 F.3d at 1173 (ALJ's failure to mention non-determinative factor was harmless error given circumstance of case).

### 4. The ALJ's Credibility Analysis is Proper and Supported by Substantial Evidence

Plaintiff next contends the ALJ erred in his RFC determination with respect to consideration of Plaintiff's credibility. Plaintiff argues the ALJ used boilerplate language when making his findings about Plaintiff's daily activities and the ALJ did not properly analyze the evidence with respect to Plaintiff's failure to stop smoking, a treatment prescribed by Plaintiff's treating physicians.

The ALJ acknowledged that Plaintiff's activities of daily living are "fairly limited." AR 44.[8] But the ALJ determined that "two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled." *Id*. The ALJ reasoned as follows:

> First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the medical evidence and other factors discussed in this decision.

---

[8] In summarizing Plaintiff's testimony, the ALJ noted the following as to Plaintiff's daily activities: Plaintiff "has to use a cane and has to use a tub chair in the shower," his mother puts on his socks and shoes, he cannot stand for any length of time, he spends a lot of time in bed due to pain, pain has caused him to become anti-social towards family and friends, and a caregiver provides all of Plaintiff's meals and takes care of household chores. AR 41. In addition to Plaintiff's daily activities, the ALJ noted Plaintiff's testimony regarding his subjective complaints of pain. The ALJ referenced Plaintiff's testimony that he suffers from neuropathy that interferes with sleeping at night, side-effects of medication cause Plaintiff to feel lightheaded and sleepy, he requires several naps per day due to the medication, he uses a cane due to knee and back pain for balance, he has trouble bending, stooping, and walking over 10 to 15 feet, he suffers spasms in the back muscle and buttocks which is "really bad at night" and Plaintiff is never pain free. *Id*.

AR 44.

In *Keyes-Zachary*, the Tenth Circuit addressed virtually identical language and deemed it sufficient, in combination with other findings, to support the ALJ's credibility analysis. *See Keyes-Zachary*, 695 F.3d at 1167-68.[9] Here, the ALJ similarly made additional findings to support his credibility analysis. The ALJ relied on the fact that: (1) Plaintiff's treating orthopedist and treating surgeon "both released him from care several years ago;" (2) in December 2006, Dr. Boone released Plaintiff with a residual functional capacity for sedentary work, where he would have the ability to change positions for every hour that he is sitting" and "limit his walking or standing each to about an hour total;" (3) Plaintiff had "significant problems healing from his fusion and revision because he was totally noncompliant on smoking cessation, per Dr. Boone;" and (4) subsequent to the April 2013 back surgery, Plaintiff's back pain has improved. AR 45.

Plaintiff challenges the ALJ's reliance on his failure to stop smoking, contending the ALJ was required to conduct a more thorough analysis pursuant to the dictates of *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987).[10] Plaintiff argues that the ALJ could not consider his failure to stop smoking in the absence of evidence that had Plaintiff stopped smoking it would have

---

[9] Plaintiff challenges the use of this language relying on an unpublished Tenth Circuit decision, *Swanson v. Barnhart*, 190 F. App'x 655 (10th Cir. 2006). But "subsequent Tenth Circuit *published* authority concerning this issue that is unfavorable to [Plaintiff's] position" rejected reliance on *Swanson* where, as here, the "lack of objective verification" is only "a *factor* in assessing the value of [Plaintiff's] hearing testimony concerning her limited daily activities." *Keyes Zachary*, 695 F.3d at 1168 (*citing Wall v. Astrue*, 561 F.3d 1048 (10th Cir. 2009)) (emphasis in original).

[10] In *Frey*, the Tenth Circuit held that four factors must be considered "[i]n reviewing the impact of a claimant's failure to undertake treatment on a determination of disability." *Frey*, 816 F.2d at 517. Those factors include: "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." *Id*.

restored his ability to work.  However, Plaintiff's smoking was a factor addressed in support of the ALJ's credibility findings, and not a basis for a denial of benefits.  Thus, the ALJ was not required to analyze Plaintiff's smoking under the dictates of the *Frey* test.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (stating that the claimant's reliance on *Frey* was misplaced where the ALJ addressed the claimant's failure to take pain medication as a basis for assessing his veracity and not to deny benefits on grounds the claimant had refused to follow prescribed treatment).

Moreover, the most recent medical record dated June 17, 2013, days before the administrative hearing, reflects Plaintiff's continued "tobacco use."  AR 789.  Plaintiff's reliance on medical records from 2005 and 2006 as to Plaintiff's attempts to quit smoking, therefore, are not persuasive.  *See* Plaintiff's Brief at p. 12 (*citing* AR 485, 487, 512, 525, 526).  Clearly, Plaintiff's treating physicians strenuously opined as to the detrimental effects of Plaintiff's continued smoking.  *See, e.g.*, AR 781 (Dr. Spence's notes stating that he discussed with Plaintiff "the detrimental effects of smoking on disk and bone degeneration: and he did "not recommend an operation while the patient is still smoking").  In light of this evidence, the ALJ properly relied on Plaintiff's failure to stop smoking as a factor in assessing Plaintiff's credibility.

Finally, and without much development, Plaintiff faults the ALJ for not considering side-effects from Plaintiff's medication when making his credibility determination.  In support, Plaintiff cites his testimony at the hearing before the ALJ in which Plaintiff stated that he would be "catotonic" at the hearing if he had taken his medications.  AR 71.[11]  Plaintiff does not

---

[11] At the hearing, Plaintiff testified that he takes the following medications for pain:  Percocet, Flexeril and Neurontin.  AR 71-72; *see also* AR 791 (medical records from Dr. Spence prescribing these medications).

14

support this claim with any citation to the medical evidence demonstrating any complaints by Plaintiff as to the side-effects of his medication.

Side-effects of medication are among several factors to be considered by an ALJ when making a credibility determination. *See Branum*, 385 F.3d at 1273-74 (discussing factors); *see also* SSR 96-7p, 1996 WL 374186 at *3. Other factors to be considered include: daily activities; the location, duration and frequency of pain and other symptoms; other treatment or measures to relieve the symptoms; and any other factors concerning a claimant's functional limitations and restrictions due to the symptoms. *Id*. The list of factors is not exhaustive, however, and the ALJ is not required to complete a "formalistic factor-by-factor recitation of the evidence." *Qualls*, 206 F.3d at 1372; *see also Poppa*, 569 F.3d at 1171. "[C]ommon sense, not technical perfection," guides the Court's analysis. *Keyes-Zachary*, 695 F.3d at 1167.

As set forth, the ALJ thoroughly discussed the medical and other evidence of record in his decision including references to the medications prescribed to Plaintiff and Plaintiff's testimony that side-effects of those medications cause Plaintiff to feel lightheaded and sleepy and cause him to require several naps per day due. AR 41, 43, 44. Thus, the ALJ did not wholly ignore Plaintiff's complaints regarding the medication. The ALJ also set forth specific evidence he relied upon in making his credibility determination. AR 44-45. The ALJ's analysis was sufficient even if he did not separately address reasons for discounting the testimony regarding side-effects of Plaintiff's medication. Under these circumstances, the credibility findings must be upheld as this Court's review is limited to verifying whether substantial evidence in the records supports the ALJ's decision and not substituting the Court's judgment for that of the ALJ. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 2000).

In sum, the ALJ's RFC determination is supported by substantial evidence. The ALJ appropriately gave great weight to Dr. Metcalf's opinion and that opinion, together with the other medical and nonmedical evidence of record discussed by the ALJ, constitutes substantial evidence to support the ALJ's findings. Accordingly Plaintiff's challenge to the ALJ's RFC determination should be rejected.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by March 25, 2016. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 11th day of March, 2016.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE